JOSEPH ROCCO RAGUSA,      :
                          :CIVIL ACTION NO. 3:12-CV-1659
        Plaintiff,     :
                          :(JUDGE CONABOY)
        v.              :
                          :
CAROLYN W. COLVIN,[1]     :
Acting Commissioner of     :
Social Security,        :
                          :
        Defendant.     :
                          :

---

## MEMORANDUM

Here we consider Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). (Doc. 1.) The Administrative Law Judge ("ALJ") who evaluated the claim found that Plaintiff had the residual functional capacity ("RFC") to perform medium exertional work with certain limitations, that jobs existed which he could perform, and, therefore, Plaintiff was not under a disability as defined in the Social Security Act from the alleged onset date of April 7, 2009, through the date of the decision, January 10, 2011. (R. 12, 16-17.) With this action, Plaintiff argues that the determination of the Social Security Administration is error for three reasons: 1) the ALJ gave "little weight" to the opinion of Plaintiff's treating rheumatologist; 2) the ALJ found that Plaintiff could perform medium exertional work; and 3) the ALJ's

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

credibility determination is not supported by substantial evidence. (Doc. 6 at 9.)

For the reasons discussed below, we conclude Plaintiff's appeal is properly denied.

## I. Background

On June 4, 2009, Plaintiff protectively filed an application for Title II Disability Insurance benefits. (*See* R. 9.) Plaintiff claimed disability beginning on April 7, 2009. (*Id.*) Plaintiff listed the illnesses, injuries, or conditions that limited his ability to work as "Churg strauss[,] stroke[,] colitis[,] partial complex seizures." (R. 108.) He added that his "speech has been affected by my stroke. It was told not to drive for a living." (R. 108.) Plaintiff had past work as a truck driver and traffic flagger. (R. 40-41, 109.)

The Social Security Administration denied Plaintiff's application by a decision issued on October 13, 2009. (R. 70-74.) On October 27, 2009, Plaintiff filed a timely Request for Hearing before an Administrative Law Judge. (R. 85-86.) On November 30, 2010, ALJ Michele Stolls held a hearing at which Plaintiff and a vocational expert ("VE") testified. (R. 21-44.) Plaintiff was represented by counsel at the hearing. (R. 21.)

At the time of the hearing, Plaintiff was 46 years old and lived with his wife and two daughters, ages four and five. (R. 27.) He was not working. (*Id.*) Plaintiff last worked on April 7, 2009, the day he had a stroke. (R. 31-32.) He remained insured through December 31, 2013. (R. 9.) In response to the ALJ's questions about why he was unable to work, Plaintiff responded that

2

he gets fatigued if he stands for two to three hours, he has a muscle issue in his back, his walking and sitting are limited, and he has weakness in his hands.  (R. 34-35.)  Plaintiff also reported that one of his medications, Trileptal, makes him "a little drowsy from time to time."  (R. 37.)  Upon questioning by his attorney about symptoms related to colitis, Plaintiff responded that the condition causes him to make frequent trips to the bathroom and also can cause extreme pain and urgency.  (R. 37.)

Following Plaintiff's testimony, the ALJ asked the VE whether there were jobs for a hypothetical claimant with the same age, education and work experience as Plaintiff with the residual functional capacity to perform work that is no more than medium exertional level but he must avoid occupations that require climbing on ladders, ropes or scaffolds.  (R. 42.)  The ALJ added that the hypothetical claimant must also avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, extreme dampness and humidity.  (*Id.*)  The ALJ also limited the hypothetical claimant to occupations that do not require exposure to hazards such as dangerous machinery and unprotected heights.  (*Id.*)  After confirming that such a claimant could not perform Plaintiff's past work, the VE identified several other positions.  (R. 42.)  The ALJ then added the following limitations: "Limited to occupations requiring no more than simple, routine tasks not performed in a fast-paced production environment, involving only simple work-related decisions, and in general, relatively few workplace changes and also can be performed wearing

3

an incontinence protection pad." (R. 43.) The VE responded the same jobs would be available. (*Id.*) When the limitation was added that the individual "would have to be off task more than 30 percent of the workday due to chronic fatigue, difficulty concentrating and unpredictable need to use the bathroom," the VE responded there would be no jobs for such a person. (R. 43.)

By decision of January 10, 2011, ALJ Stolls found that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17.) After finding Plaintiff had the severe impairments of "Churg Strauss vasculitis status post cerebral vascular accident, asthma and chronic obstructive pulmonary disease" (R. 11) and that none of these impairments alone or in combination met or equaled a listed impairment (R. 12), she found Plaintiff

> has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). The claimant must avoid occupations that require climbing ladders, ropes and scaffolds. The claimant must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes[,] extreme dampness and humidity. The claimant is limited to occupations that do not require exposure to hazards such as dangerous machinery and unprotected heights.

(R. 12.)

Because the ALJ determined that jobs exist in the national economy that Plaintiff can perform (R. 16-17), she concluded that Plaintiff had not been under a disability as defined in the Social Security Act from April 7, 2009, through the date of her decision, January 10, 2011. (R. 17.)

4

Plaintiff requested review of the ALJ's decision, and on June 22, 2012, the Appeals Council issued a notice denying Plaintiff's request. (R. 1.) Therefore, the ALJ's decision became the decision of the Commissioner.

Plaintiff filed this action on August 21, 2012. (Doc. 1.) He filed his brief in support of the appeal on December 4, 2012. (Doc. 86.) Commissioner Astrue filed his opposition brief on February 3, 2013. (Doc. 7.) Plaintiff filed a reply brief on January 11, 2013. (Doc. 8.) Therefore, this matter is fully briefed and ripe for disposition.

## II. Discussion

### A. *Relevant Authority*

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2] It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). A reviewing court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Plummer*, 186 F.3d at 427

(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Therefore, we will not set aside the Commissioner's final decision if it is supported by substantial evidence, even if we would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). These proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not

charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F.2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

Finally, the Third Circuit has recognized that it is necessary for the Secretary to analyze all evidence. If he has not done so and has not sufficiently explained the weight he has given to all probative exhibits, "to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky*, 606 F.2d at 407. In *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981), the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected. "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the

evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."  *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).  Only where the ALJ rejects conflicting probative evidence must he fully explain his reasons for doing so.  *See*, *e.g.*, *Walker v. Comm'r of Soc. Sec.*, 61 F. App'x 787, 788-89 (3d Cir. 2003) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  Further, the ALJ does not need to use particular language or adhere to a particular format in conducting his analysis.  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated."  *Hernandez v. Commissioner of Social Security*, 89 Fed. App'x 771, 774 (3d Cir. 2004) (not precedential).

## B.  *Plaintiff's Alleged Errors*

As set out above, Plaintiff asserts the ALJ erred on three bases: 1) the ALJ gave "little weight" to the opinion of Plaintiff's treating rheumatologist, Miroslawa Nowak, M.D.; 2) the ALJ found that Plaintiff could perform medium exertional work; and 3) the ALJ's credibility determination is not supported by substantial evidence.  (Doc. 6 at 9.)

## 1.  Treating Physician's Opinion

Plaintiff first contends the ALJ erred in giving "little weight" to Dr. Nowak's opinion.  (Doc. 8 at 6-10.)  We disagree that the ALJ's analysis of Dr. Nowak's opinion is flawed.

9

Under applicable regulations and the law of the Third Circuit, a treating doctor's opinions are generally entitled to controlling weight, or at least substantial weight. *See*, *e.g.*, *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). The "treating physician rule," is codified at 20 C.F.R. 404.1527(c)(2), and is widely accepted in the Third Circuit. *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986). The regulation addresses the weight to be given a treating physician's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight." 20 C.F.R. § 416.927(c)(2).[3] "A

---

[3] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight,

cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted); *see also Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

The opinion at issue here is that of Miroslawa Nowak, M.D., who treated Plaintiff from January 2009 through November 2009 for the Churg Strauss Syndrome (R. 14) which Plaintiff described as "a

---

we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

11

rare blood disorder" which causes "all sorts of stuff" (R. 39).[4]

Plaintiff points to a letter from Dr. Nowak dated November 28, 2009, in which she stated the following:

> I have been following Mr. Ragusa for Churg-Strauss vasculitis. Patient has sustained a right temporoparietal stroke with resultant aphasia that has improved, but has not resolved. Patient has been on Imunosupressive treatment but still stroke has occurred despite of that. Although his medications were adjusted I am not sure if this will control his disease fully as he has very unusual presentation of unusual disease. He was seen for second opinion in Cleveland Clinic. At this time I think that he is not able to work full time in any position and I feel that he is disabled.

(R. 340-41.)

---

[4] According to the Cleveland Clinic website,

> Churg Strauss syndrome (CSS) is an extremely rare disease – there are only 2 to 5 new cases per year per 1 million people. CSS results from inflammation that occurs in certain types of cells in blood or in tissues. This inflammation causes injury to organ systems – the most commonly involved are the lungs, nose, sinuses, skin, joints, nerves, intestinal tract, heart, and kidneys. . . .
>
> . . . Some of the most serious manifestations of CSS are related to the presence of vasculitis.
>
> . . . Vasculitis is a general medical term that refers to inflammation of the blood vessels. When blood vessels become inflamed, they can stretch, become thin-walled, or narrow in size. When they weaken and stretch in size, aneurysms can develop. . . . When they thin, the walls can rupture and blood leaks into tissue. Vasculitis can also cause blood vessels to narrow to the point of closing. Organs can be damaged from the loss of oxygen and nutrients that were being supplied by the blood.

http://my.clevelandclinic.org/orthopaedics-rheumatology/diseases-conditions/hic-churg-strauss-syndrome.

The ALJ stated that Dr. Nowak's November 2009 opinion that Plaintiff was unable to work and disabled "is given little weight." (R. 15.) The ALJ provided the following analysis:

> Dr. Nowak's own records and other medical evidence of record do not support this opinion. Immediately after the claimant had his stroke in April of 2009 he was ordered off work for three months as per Dr. Martha Boulos. However, the claimant's condition rapidly improved, his speech through therapy became basically back to normal and he has no additional physical objective criteria reported on physical examination or abnormal diagnostic testing post CVA. Dr. Nowak is basing her opinion on the fact that she adjusted his medications and she is not sure how well he will respond to this change. However, to date - twenty months post CVA, he appears to have responded well, in that all testing and examinations have been unremarkable. Additionally, disability for individuals who have attained age 18 is defined as the inability to do any substantial gainful activity by reason of any determinable physical or mental impairment, which can be expected to result in death or has lasted or is expected to last for a continuous period of not less than 12 months (20 CFR 404.1505 and 416.905). Clearly, the effects from the CVA have not lasted for or were not expected to last for a period of over twelve months; as such, the claimant is not entitled to benefits under Title II. Moreover, as with all opinions rendered as to a claimant's status as "disabled", this issue is clearly reserved to the Commissioner (Social Security Ruling 96-5p).

(R. 15.)

Plaintiff first asserts that the ALJ's analysis is in error because her conclusion "to date - 20 months post CVA, he appears to have responded well, in that all the testing and examinations have

13

been quite unremarkable" (R. 15) is unfounded in that the record is void of any testing or examinations which occurred after Dr. Nowak's November 28, 2009, opinion.  (Doc. 6 at 14-15.)

We agree that the ALJ's statement can be construed as an incorrect assessment of the record if the statement is taken to infer that post November 2009 testing and examination results exist in the record.  Though this is not the only possible interpretation of the ALJ's statement, even if we accept Plaintiff's claimed error, the error would be harmless because the ALJ provides other reasons to discount Dr. Nowak's opinion--reasons that provide substantial evidence for her decision to afford little weight to Dr. Nowak's opinion.

Other evidence which supports the limited weight assigned to Dr. Nowak's opinion includes her assessment that

> Dr. Nowak's own records and other medical evidence of record do not support this opinion.  Immediately after the claimant had his stroke in April of 2009 he was ordered off work for three months as per Dr. Martha Boulos.  However, the claimant's condition rapidly improved, his speech through therapy became basically back to normal and he has no additional physical objective criteria reported on physical examination or abnormal diagnostic testing post CVA.

(R. 15.)

While we would prefer specific citations to the record in the ALJ's analysis, our review of the medical evidence confirms the ALJ's assessment of record evidence for the time period preceding

Dr. Nowak's opinion.  As pointed out by Defendant, Dr. Nowak documented benign findings at Plaintiff's office visits in May, June and November of 2009.  (Doc. 7 at 13 (citing R. 257-62, 334-36).)

Plaintiff saw Dr. Nowak on May 4, 2009, for follow-up evaluation of his Churg-Strauss vasculitis.  (R. 260.)  He reported that he had a stroke on April 7, 2009, that he was seeing neurologist Dr. Martha Boulos, and that he would be off work for three months.  (R. 260.)  In the review of systems, Dr. Nowak noted Plaintiff had joint pain and some difficulty talking though his speech was improving (he was working with a speech therapist once a week).  (R. 260-61.)  All other systems were normal.  (R. 260.)  Dr. Nowak's assessment included the notation that Plaintiff "[c]linically does not have active disease."  (R. 262.)  He was directed to call if he had any new symptoms.  (R. 262.)

Plaintiff again saw Dr. Nowak on June 15, 2009.  (R. 257.)  In her Outpatient Clinic Note, Dr. Nowak stated that she first saw Plaintiff in January of 2009 and his medical history included a diagnosis of Churg-Strauss vasculitis, initially diagnosed with bowel involvement based on a biopsy from surgery performed several years earlier.  (R. 257.)  Dr. Nowak further reported that in January 2009 Plaintiff was stable "just on methotrexate at 20 mg once a week" and "[h]e was doing well then without any symptoms of active disease."  (R. 257.)  Dr. Nowak then reviewed Plaintiff's

15

May 2009 office visit, noting that "he had symptoms of aphasia that has significantly improved, and he was getting better as he was having speech therapy." (R. 257.) Dr. Nowak further noted that Plaintiff's "care was discussed with his neurologist, Dr. Martha Boulos, and as no other etiology of stroke was revealed, one needs to assume that this is related to vasculitis, as there is increased possibility of stroke with patient with Churg-Strauss vasculitis. This usually happens when disease activity is increased." (R. 258.) Drs. Nowak and Boulos decided the best way to prevent recurrence of stroke was to treat the underlying disease and to change Plaintiff from methotrexate to Imuran. (R. 258.) Plaintiff reported no complaints at the time--no abdominal discomfort, no shortness of breath or nasal discharge and Dr. Nowak found him "generally well." (R. 259.) Dr. Nowak's impression was "Churg-Srauss vasculitis, right temporal stroke with aphasia. The patient has improved." (R. 260.)

The last record from Dr. Nowak is from Plaintiff's November 24, 2009, office visit for further evaluation of his Churg-Strauss vasculitis. (R. 334.) Since the previous visit, Plaintiff had been seen at the Cleveland Clinic. (R. 334.) He had also been seen by neurologist Dr. Ralf Van Der Sluis, and GI specialist Dr. Chen. (R. 334.) He had decreased his prednisone and was taking Imuran. (R. 334.) Dr. Nowak noted Plaintiff's job status as "sick leave; he is disabled since he had stroke." (R. 334.) Plaintiff

had joint pain and still had some difficulty talking but was improving. (R. 334.) All other review of systems were normal. (R. 334.) In her Assessment, Dr. Nowak notes that Plaintiff has unusual manifestations of Churg-Strass including GI disease and stroke, although the latter is not completely certain. (R. 335.) She further states: "With severe manifestations of Churg-Strauss and a stroke I think he is not able to work." (R. 335.) Having reviewed the labs, Dr. Nowak reported that Plaintiff had anemia and stool for occult blood was positive. (R. 335.) Dr. Nowak wanted Plaintiff to follow up with a GI specialist as further evaluation was needed. (R. 335.) In a letter dated November 28, 2009, addressed "To Whom It May Concern regarding Mr. Ragusa," Dr. Nowak offered the opinion at issue here: "At this time I think that he is not able to work full time in any position and I feel that he is disabled." (R. 341.)

This review of Dr. Nowak's treating notes does not reveal evidence of the basis for her opinion that Plaintiff was unable to work full-time in any position. Plaintiff had showed steady improvement with the speech difficulty he experienced after his stroke. Although GI difficulties were noted, in May and June he had no active disease and no reported difficulties, and in November there was no report of GI problems other than what was revealed in lab results. This is not a case where the treating physician's opinion "is well-supported by medically acceptable clinical and

laboratory diagnostic techniques" and, therefore, it is not entitled to controlling weight pursuant to 20 C.F.R. § 416.927(c)(2).

Furthermore, as noted by the ALJ, other medical evidence does not support Dr. Nowak's assessment. (R. 15.)

On April 8, 2009 (the day after Plaintiff's stroke) GI consultant Yen S. Chen, M.D., noted that he had been asked to see Plaintiff because of a history of chronic diarrhea--reportedly "for the past ten years, he has been suffering with chronic diarrhea. He has approximately two loose bowel movements a day and this has again been blamed on the Churg-Strauss syndrome." (R. 162.) In his review of systems, Dr. Chen noted Plaintiff admitted to diarrhea but denied abdominal pain, bloating, gas, dysphagia, odynophagia, nausea, vomiting, constipation, rectal bleeding, hematemesis, melena, burping or hiccups. (R. 163.) His assessment included chronic diarrhea and the plan was to obtain old records for review, to check stools before using anticoagulation if concerned over GI bleed (Dr. Chen doubted there was a bleed because "H&H is normal"), and to follow the patient with Dr. Martha Boulos. (R. 165-66.)

On May 1, 2009, Plaintiff's neurologist, Dr. Martha Boulos, noted that "she put him off work since he worked as a flagger on the road" (R. 249), and he would continue to be off work until July 2009. (R. 251). She noted his aphasia was present but improving

and he denied any other systemic problems, including denial of the GI problems of nausea, vomiting, abdominal pain, diarrhea, constipation, or blood in the stool. (R. 250.) Her impression was "1. Churg Strauss disease[;] 2. Acute left temporal infarct at the beginning of April, possibly vasculitic in nature[;] 3. Seizure disorder, controlled on Trileptal; 4. Inflammatory colitis status post colon resection." (R. 250-51.)

On May 11, 2009, Dr. Chen reported that Plaintiff was feeling better compared to his last visit. Plaintiff reported abdominal aching and pressure and associated anorexia, bloating, change in bowel habits, constipation, malaise and nausea, but denies associated diarrhea, back pain, flank pain, rectal pain, rectal bleeding and weight loss. (R. 239.) Comments under Dr. Chen's Plan stated that Plaintiff "had GI manifestation of vasculitis Churg straus[;] he is to stay on medicine[;] he does not have bleed or diarrhea or major pain[;] . . . followup [] in 4 months." (R. 240.)

On June 3, 2009, Dr. Boulos reported in her office visit notes that "patient is having difficulty with disability and unemployment currently and he is under stress for that." (R. 246.) Plaintiff continued to have expressive speech problems. (R. 246.) Included in her Impression was the following notation: "I did give him a note since the patient would like to work any kind of job that he is allowed to go back to some form of employment that does not

require eloquent expressive speech or driving until further notice." (R. 247.)

In the office notes from Plaintiff's August 3, 2009, visit, Dr. Boulos reported that Plaintiff was doing well overall and that he had stopped speech therapy, saying that he did not need further treatment although he had some difficulty expressing himself if he talked quickly. (R. 245.) At the time Plaintiff had started the Imuran, prednisone had been tapered down, and he was also taking Plavix and Trileptal. (R. 245.) The plan was for Plaintiff to continue on his medications, continue to follow up with Dr. Nowak, and return to see Dr. Boulos again in three months. (R. 245.)

On August 11, 2009, Plaintiff saw Angela M. DeAntonio, M.D. at the request of Dr. Nowak and his primary care physician, Dr. Timothy Brown. (R. 318.) In her "Pulmonary Outpatient Note," Dr. DeAntonio noted that "[t]he patient currently is feeling well. He has . . . no difficulty with activities. He is able to do all of his activities of daily living. He has improved significantly with his expressive aphasia." (R. 318.)

On August 17, 2009, Plaintiff saw Dr. Brown. (R. 253.) At the visit Plaintiff reported that he was fully recovered from the stroke although he had difficulty with words occasionally. (R. 253.) Dr. Brown noted that Plaintiff had "asthma and dyspnea on exertion," hypertension and colitis; other "review of systems" were negative. (R. 254-55.) He also noted that Plaintiff's Churg-

Strauss syndrome was stable.  (R. 255.)

This review of medical evidence does not reveal any support for Dr. Nowak's opinion that Plaintiff was not able to work in November of 2009.  On the contrary, Dr. Boulos, who reviewed medication changes with Dr. Nowak (R. 258), originally estimated that Plaintiff would be off work until July 2009 (for three months post stroke) (R. 241) but cleared Plaintiff to work in June of 2009 with the restrictions that the work "not require eloquent expressive speech or driving until further notice" (R. 247).  Other physicians found Plaintiff improving and doing well despite the underlying Churg-Strauss syndrome.  Although Plaintiff points to his medication changes and the lack of evidence post November 2009 that he adjusted well to the ongoing adjustments (Doc. 8 at 3-4), there is no indication from any physician that Plaintiff was having difficulty adjusting to medication changes made before November 28, 2009, or that any difficulty was likely.  Furthermore, as the record review shows, there is no indication that the effects of Plaintiff's stroke were expected to last for the twelve-month duration required to establish disability under the Social Security Act.  Therefore, Dr. Nowak's opinion that Plaintiff was unable to work in any position and was disabled in November 2009 is not entitled to controlling weight because it is inconsistent with the other substantial evidence.  *See* 20 C.F.R. § 416.927(c)(2).

Finally, we address Plaintiff's argument that the ALJ here had

a duty to develop the record and her failure to do so renders her decision to discredit Dr. Nowak's opinion without the support of substantial evidence.  (Doc. 6 at 16-19.)  First we reiterate that the claimant bears the burden of establishing disability.  20 C.F.R. § 404.1512.  As discussed above, our review of the record validates the ALJ's reasons for discounting Dr. Nowak's opinion with the exception of her possible reference to post November 2009 records.  Plaintiff provides no evidence that the ALJ's error regarding post November 2009 records was not harmless.  As noted previously, we find no evidence to suggest that problems were anticipated with ongoing medication adjustments.

We concur that the duty to assist the claimant and develop the record is well-established.  However, the duty is not unlimited. The requirement does not necessarily come into play where "there was sufficient evidence in the medical records for the ALJ to make her decision."  *Moody v. Barnhart*, 114 F. App'x 495, 501 (3d Cir. 2004) (not precedential); *see also Griffin v. Commissioner of Social Security*, 303 F. App'x 886, 890 n.5 (3d Cir. 2009) (not precedential).  Our review of the records in this case shows this to be a situation where ample medical records from the relevant time period provided substantial evidence to support the ALJ's decision.  Therefore, we conclude Plaintiff's claimed error is without merit.

## 2.  Residual Functional Capacity and Past Relevant Work

Plaintiff next argues that the ALJ erred because she concluded

Plaintiff could not return to his past relevant work, including his job as a traffic flagger which is at the light exertional level, yet he could perform medium exertional work. (Doc. 6 at 19.) We conclude the ALJ did not err on this basis.

Plaintiff points to 20 C.F.R. § 416.967(c) which provides that if a person can do medium work, they are also capable of doing light and sedentary work. (Doc. 6 at 19.) Plaintiff then argues that the reverse is not true. (*Id.*) Rather, if a claimant cannot perform light work, then he cannot perform more intense medium work. (*Id.*)

We find this argument without merit in that, as argued by Defendant, the ALJ found Plaintiff could not perform his job as a traffic flagger because of environmental limitations rather than physical limitations––it was Plaintiff's limitations to temperature extremes and dampness/humidity that prevented him from performing his past work as a flagger, not the physical demands of the work. (*See* Doc. 7 at 18-20.) Because Plaintiff does not reply to Defendant's well-reasoned analysis, we need not discuss this issue further.

In this section of his supporting brief, Plaintiff also argues that Claimant's testimony shows he cannot perform medium exertional work which requires lifting/carrying fifty pounds occasionally and twenty-five pounds frequently, as well as the ability to sit or walk for six hours a day. (Doc. 6 at 20 (citing *Khon v. Barnhart*,

23

No. Civ. A. 03-5122, 2004 WL 2203740, at *7 (citing 20 C.F.R. §
404.1567(c))).)  Plaintiff points to his testimony that he could
not stand for more than two to three hours a day (R. 34), cannot
walk for more than twenty minutes to half-hour (R. 35), and cannot
sit for more than a half-hour (R. 35).  (Doc. 6 at 20.)  Plaintiff
does not develop this argument and we will not discuss it further
here.  However, to the extent the assertion entails an analysis of
the ALJ's credibility findings, we will discuss it in the context
of Plaintiff's third claimed basis for error.

**3.  <u>Step Five Determination</u>**

Plaintiff's final claimed basis for error is that the ALJ's
determination that Plaintiff can perform the jobs suggested by the
VE is not supported by substantial evidence because the ALJ did not
credit the hypothetical question posed to the VE which included
limitations supported by the record.  (Doc. 6 at 21.)  Plaintiff
earlier posed this error in terms of credibility: the ALJ's
credibility assessment was not based on substantial evidence.
(Doc. 6 at 9.)  We conclude the claimed error is without merit.

*Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), discusses
objections related to an ALJ's conclusion at step five--objections
to the determination that the plaintiff retained the functional
capacity to perform jobs existing in the workforce.  399 F.3d at
553.  *Rutherford* notes this determination is normally based in
large measure on testimony provided by a vocational expert and

objected to on the basis that the credited testimony cannot form the basis of a substantial evidence determination because it was based on responses to hypothetical questions that did not adequately consider the plaintiff's physical limitations. *Id. Rutherford* extensively reviews Third Circuit guidance concerning the issue, observing that

> objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself. That is, a claimant can frame a challenge to an ALJ's reliance on vocational expert testimony at step 5 in one of two ways: (1) that the testimony cannot be relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert. Challenges of the latter variety . . . are really best understood as challenges to the RFC assessment itself.

*Rutherford*, 399 F.3d at 554 n.8.

In *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984), the Circuit Court discussed the proper use of expert testimony.

> Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such job exist in the national economy. While the ALJ may proffer a variety of assumptions to

25

> the expert, the vocational expert's testimony
> concerning a claimant's ability to perform
> alternative employment may only be considered
> for purposes of determining disability if the
> question accurately portrays the claimant's
> individual physical and mental impairments.
> Thus the expert must have evaluated
> claimant's particular impairments as
> contained in the record.

745 F.2d at 218. *Rutherford* clarifies that an ALJ is not required

to submit to the vocational expert "every impairment *alleged* by a

claimant." 399 F.3d at 554. Rather, the hypothetical posed must

"accurately convey to the vocational expert all of a claimant's

*credibly established limitations*."[5] *Id.* (citing *Plummer*, 186 F.3d

at 431.)

Case law and regulations[6] address when a limitation is

credibly established. 399 F.3d at 554.

> Limitations that are medically supported and
> otherwise uncontroverted in the record, but
> that are not included in the hypothetical
> question posed to the expert, preclude
> reliance on the expert's response (*Burns*, 312
> F.3d at 123). Relatedly, the ALJ may not
> substitute his or her own expertise to refute
> such record evidence (*Plummer*, 186 F.3d at
> 429). Limitations that are medically
> supported but are also contradicted by other
> evidence in the record may or may not be

---

[5] *Rutherford* notes that "[a]lthough the impairment must be
medically determinable, it need not be a 'severe' impairment to be
considered in the RFC assessment." 399 F.3d at 554 n.7 (citing 290
C.F.R. § 945(a)(2)).

[6] *Rutherford* specifically identifies 20 C.F.R. §§ 416.945,
929(c) and 927) as relevant to the inquiry. 399 F.3d at 554.

> found credible--the ALJ can choose to credit
> portions of the existing evidence but "cannot
> reject evidence for no reason or for the
> wrong reason" (a principle repeated in *Mason
> v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.
> 1993)[)]; [20 C.F.R. § 416.]c)(4)). Finally,
> limitations that are asserted by the claimant
> but lack objective medical support may
> possibly be considered nonetheless credible.
> In that respect the ALJ can reject such
> limitation if there is conflicting evidence
> in the record, but should not reject a
> claimed symptom that is related to an
> impairment and is consistent with the medical
> record simply because there is no objective
> medical evidence to support it. ([20 C.F.R. §
> 416.]929((c)(3)).

399 F.3d at 554.

Here Plaintiff maintains that in the last hypothetical posed to the VE, the ALJ asked the VE "whether Claimant could perform any of the suggested jobs if he was 'off-task 30% of the day due to chronic fatigue, difficulty concentrating, and unpredictable need to need [sic] to use the bathroom[,]' [and] [t]he VE responded that Claimant could not perform the suggested jobs." (Doc. 6 at 21 (citing R. 44).) Plaintiff further contends that all of the limitations identified in this hypothetical were credibly established (Doc. 6 at 21), concluding that "[t]he ALJ improperly discounted Claimant's complaints relating to his fatigue, and totally ignored Claimant's GI problems" (*id.* at 23.)

Given Plaintiff's argument and the framework set out above, we must determine whether the limitations posed in the hypothetical which the ALJ did not credit were credibly established. Plaintiff

27

does not specifically address his alleged concentration difficulties. *(See* Doc. 6 at 21-24.) Therefore, we will not discuss this alleged limitation further.

Regarding Plaintiff's fatigue, he points to the following testimony he provided at the ALJ hearing: he becomes fatigued if he stands longer than two to three hours; his medication, Trileptal, makes him drowsy; and he cannot walk for more than twenty minutes to half-hour. (Doc. 6 at 22 (citing R. 34-35).) Plaintiff does not point to objective medical support for his claimed limitations due to fatigue. Therefore, the ALJ could reject such limitation if there is conflicting evidence in the record. *Rutherford*, 399 F.3d at 554.

In finding Plaintiff's subjective allegations less than completely credible, the ALJ points to objective signs and findings since Plaintiff's stroke, including Dr. Brown's notation in August of 2009 that Plaintiff had "basically fully recovered from the stroke," Dr. Boulos' observations that Plaintiff was doing well and had a basically normal examination in June, Dr. Nowak's June 2009 office visit where Plaintiff had no complaints and a normal examination.[7] (R. at 13-14.)

---

[7] We note that we do not find the ALJ's statement that "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (R. 13) to be a valid reason to discredit Plaintiff's testimony as the ALJ's credibility finding is to precede the RFC determination. See *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). However, this flaw is not cause

Further examples of conflict in the record include Defendant's observations that Plaintiff routinely denied experiencing any subjective complaints to his treating physicians (Doc. 7 at 22 (citing record)) and on at least two occasions specifically denied fatigue (*id.* (citing R. 163-64, 250)).  Furthermore, in Pulmonary Outpatient Notes of August 11, 2009, Dr. DeAntonio noted the following:

> The patient currently is feeling well. He is not short of breath. [H]e is not dyspneic with exertion.  He has no morning stiffness, no difficulty with activities.  He is able to do all of his activities of daily living.  He has improved significantly with his expressive aphasia.  He has not had any upper respiratory tract infections.  He does not hear himself wheeze.

(R. 319.)

Based on this evidence we conclude Plaintiff's claimed fatigue limitation conflicts with the evidence of record and, thus, the ALJ was entitled to discredit Plaintiff's subjective accounts of fatigue.  Because the ALJ was entitled to discount Plaintiff's complaints of fatigue, he was not required to credit the VE's response to a hypothetical which included such a limitation.

Regarding Plaintiff's asserted GI limitations, we conclude the lack of complaints on regular visits to Drs. Brown, Boulos, and

for remand where, as here, the ALJ has otherwise explained his conclusion adequately--in this situation, the inclusion of this kind of language can be harmless.  *Id.*

Nowak regarding GI issues undermines his assertions that his GI related limitations are disabling and should have been credited as such. The evidence of record from GI consultant Yen S. Chen, M.D. dated April 8, 2009, shows that Plaintiff was being seen for his history of chronic diarrhea where he noted "[p]atient states that for approximately the past 10 years, he has been suffering with chronic diarrhea. He has approximately two loose bowel movements a day and this has again been blamed on the Churg-Strauss syndrome." (R. 162.)

In May 2009, Dr. Chen reported that Plaintiff was feeling better compared to his last visit. Plaintiff reported abdominal aching and pressure and associated anorexia, bloating, change in bowel habits, constipation, malaise and nausea, but denied associated diarrhea, back pain, flank pain, rectal pain, rectal bleeding and weight loss. (R. 239.) Comments under Dr. Chen's Plan stated that Plaintiff "had GI manifestation of vasculitis Churg straus[;] he is to stay on medicine[;] he does not have bleed or diarrhea or major pain[;] . . . followup [] in 4 months." (R. 240.)

This evidence shows that, although GI problems related to Plaintiff's Churg-Strauss syndrome are documented in the record, the evidence does not support the degree of limitation suggested by Plaintiff. Dr. Chen's report can also be seen as evidence conflicting with a claim of disabling GI problems in that Plaintiff

*did not have* major bleeding or pain. (R. 240.) Other conflicting evidence supports this conclusion, including the following: the August 2009 report that Plaintiff had no difficulty with daily living activities (R. 318); at the ALJ hearing Plaintiff's initial response to the question of why he was unable to work did not include GI problems (R. 34-35)--it was when Plaintiff's attorney directed Plaintiff to address his colitis symptoms that Plaintiff elaborated on the associated diarrhea problems (R. 37); Plaintiff successfully worked with this condition for many years (*see*, *e.g.*, R. 37, 162) and only stopped working because of the stroke he suffered in April 2009; and Plaintiff's GI problem was not mentioned by either Dr. Boulos or Dr. Nowak (the two doctors who opined about his inability to work) as a factor which weighed into their decisions. (*See* R. 249, 251, 341.)

Because evidence conflicting with Plaintiff's subjective GI complaints exists in the record, the ALJ did not err in discounting the related claimed limitations. Furthermore, to the extent the ALJ asked whether the jobs identified by the VE could be performed wearing an incontinence pad (R. 43), the ALJ took into account Plaintiff's claims of urgency. Thus, the ALJ was not required to credit the VE's response to a hypothetical which included Plaintiff's claimed GI related limitations.

Finally, Plaintiff reiterates his assertion that the ALJ erred in basing her decisions on an incomplete record. (Doc. 6 at 23.) As discussed previously, we find this argument without merit.

31

### III. Conclusion

Plaintiff's appeal of the Commissioner's decision (Doc. 1) is denied.  An appropriate Order is filed simultaneously with this Memorandum.

                                    S/Richard P. Conaboy
                                    RICHARD P. CONABOY
                                    United States District Judge

DATED: January 15, 2014